FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In Re the Matter of the Marriage of | No. 45835-7-II |
| JOHN ARTHUR MASON, | |
| Respondent, | |
| and | |
| TATYANA IVANOVNA MASON, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Tatyana Mason appeals from a trial court order modifying a parenting plan in which the trial court ordered that John Mason assume responsibility as the primary parent of the parties' children. Tatyana[1] argues that (1) the trial court's ruling was not based on substantial evidence, (2) the trial court erred by denying her motion for reconsideration based on the existence of new evidence, (3) this court should reverse the trial court's entry of the restraining order, and (4) this court should award her attorney fees. We hold that substantial evidence supports the trial court's ruling, the trial court did not err by denying Tatyana's motion for reconsideration nor by entering the restraining order, and neither party is awarded attorney fees. We affirm.

---

[1] We refer to the Masons by their first names for clarity, intending no disrespect.

FACTS

## I. BACKGROUND

John and Tatyana married in 1999. They had two children, G.M. and D.M. John filed for divorce in 2007, and the parties engaged in mediation, agreeing upon final orders including a parenting plan. The orders specified that John and Tatyana would share custody of their children. Contemporaneously with John's 2007 dissolution filing, Tatyana filed a petition for a domestic violence protection order. A court commissioner granted the petition.

After the dissolution, G.M. and D.M. participated in counseling with social worker Stephen Wilson. During this time, John became concerned about Wilson's treatment of G.M. following an incident in which G.M. hit his younger brother. When the parties could not agree on a new counselor, John filed a motion to the trial court to appoint one. The court appointed Sandra Hurd to assume responsibility for the Mason family's counseling needs. The court also ordered both John and Tatyana to undergo counseling with Hurd, which they each did initially.

In February 2011, G.M. made disclosures to John alleging physical and emotional abuse by Tatyana. D.M. corroborated G.M.'s allegations. John responded by taking the children to Hurd and by contacting Child Protective Services (CPS). The Mason children again made disclosures of abuse. G.M. and D.M. also expressed fear about returning to their mother's care.

John then filed a petition to modify the parenting plan, obtaining an emergency order granting custody of G.M. and D.M. in his favor in the meantime. The order limited Tatyana's time with the children to professionally supervised visits. The trial court also appointed Ralph Smith to serve as guardian ad litem (GAL).

Smith conducted an investigation into the children's allegations and generated a report of his findings. Smith concluded that Tatyana used fear and physical force against G.M. and that her actions rose to the level of abuse. Smith recommended that the children remain with John and that Tatyana maintain her supervised visitation. Smith also recommended that Tatyana undergo a parenting evaluation regarding her "tendency for violence." Ex. 12 at 9.

Tatyana initially complied with the supervised visit requirement, but later ceased attending the visits for extended periods of time. Following a number of reported incidents during the visitations, Hurd composed a recommendation letter in which she determined that the visits were stressful for G.M. and D.M. Smith then filed a motion urging the court to suspend Tatyana's visitation rights until she obtained the recommended parenting evaluation.

Rather than suspending Tatyana's visitation rights entirely, the trial court ordered that Tatyana's visits be therapeutic in nature, but Tatyana never arranged or coordinated such visits. Tatyana claimed she could not afford to pay for the therapeutic visits or other supervised visitation time because she had lost her home and she had no income.[2]

Tatyana also failed to obtain the recommended parenting evaluation, instead filing a motion asking the trial court to order an evaluation for both parents. Tatyana and John agreed that Dr. Loren McCollom would conduct the evaluation, but Tatyana did not inform John when she began the evaluation process. In light of Tatyana's domestic violence allegations and when he became

---

[2] Tatyana was generally uncooperative when asked about her finances or her living arrangement at the time of the hearing. She admitted that she was living with a person with whom she was in a relationship, but refused to tell the court where she was living.

aware of the court's order to evaluate both parents, Dr. McCollom suspended the evaluation process.

## II. PROCEDURE

The parties proceeded to trial on the modification petition absent Dr. McCollom's report. There, John urged the court to adopt a modified parenting plan according to which he would have sole custody of the children with therapeutic visitation sessions for Tatyana. The basis of John's proposed modification was Tatyana's physical and emotional abuse of G.M. and D.M.

Tatyana opposed the modification at least insofar as the trial court would grant John's request without first obtaining Dr. McCollom's evaluation report. The trial court heard testimony from John, Tatyana, Hurd, Dr. McCollom, and Smith, among others. The trial court found credible the testimony regarding Tatyana's abuse of the children. Notwithstanding that determination, however, the trial court granted Tatyana's request to continue the hearing so that the parties could complete the parenting evaluation with Dr. McCollom. The trial court ordered John and Tatyana to share the cost of the evaluation.

Dr. McCollom conducted the parenting evaluation. John complied with the court's order and paid his portion of the evaluation cost, but because Tatyana did not do so, Dr. McCollom would not release the report, so the trial court again continued the hearing on two additional occasions. By October 2013, Tatyana still had not remitted payment, but the trial court refused to continue the matter further.

The trial court heard additional testimony and considered new evidence, including a CPS report finding that the allegations of abuse by Tatyana were "founded." The court made an oral ruling during which it noted that there had been a previous finding of domestic violence against

4

John, but concluded that there was no evidence to support an additional finding to that effect and, in the court's view, there were no concerns about future domestic violence from John.

The trial court entered findings of abuse by Tatyana pursuant to RCW 26.09.191 and granted John's request to modify the parenting plan under RCW 26.09.260. The court expressed concern that Tatyana had not exercised all of her visitation rights pursuant to the former court orders and that at one time, she let nearly one year pass without contacting the children.

As part of its order, the court also remarked that the goal of the modified final orders was to establish a system whereby Tatyana and the children can develop a healthy relationship through the development and implementation of a reunification plan with a new counselor. The court assigned a case coordinator to make sure that the reunification plan progressed satisfactorily. The trial court also entered a restraining order, enjoining Tatyana from contacting G.M. and D.M. at their school or day care.

Following the entry of the modified parenting plan, Tatyana entered into a payment agreement with Dr. McCollom so that she could obtain the parenting evaluation report. Tatyana then filed a motion for reconsideration. The trial court declined to reconsider its earlier ruling. Tatyana appeals the trial court's order modifying the parenting plan and its order denying Tatyana's motion for reconsideration.

No. 45835-7-II

## ANALYSIS

### I. Substantial Evidence Supports The Trial Court's Modification Order

Tatyana contends that the trial court erred by entering the order granting John's motion to modify the parenting plan because the trial court's findings of fact were not supported by substantial evidence and because the court did not rule on "sufficient information." Br. of Appellant at 20-23. Because the trial court heard ample testimony, which it found credible, from various professionals who determined that Tatyana abused G.M. and D.M., we conclude substantial evidence supports the trial court's parenting plan decision.

Generally, we review a trial court's rulings on a parenting plan for abuse of discretion. *In re Marriage of Christel*, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000) (citing *In re Marriage of Wicklund*, 84 Wn. App. 763, 770, 932 P.2d 652 (1996)). We do not reverse a trial court's decision to modify a parenting plan under RCW 26.09.260 unless the trial court exercised its discretion in an untenable or manifestly unreasonable way. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993).

Specifically, we review a trial court's findings of fact to determine whether substantial evidence supports the findings and whether those findings of fact support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013), *review denied*, 179 Wn.2d 1011 (2014). "Substantial evidence" is the quantum of evidence "sufficient to persuade a rational fair-minded person the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

We make all reasonable inferences from the facts in John's favor as the prevailing party below. *Scott's Excavating*, 176 Wn. App. at 342. And we do not "disturb findings of fact

6

supported by substantial evidence even if there is conflicting evidence." *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002).

RCW 26.09.260 governs modifications of parenting plans. It provides in pertinent part,

(1) Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. . . .

(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

. . . .

(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Here, in support of its decision that modification of the parenting plan was in the children's best interest, the trial court found that the children's environment under the then-existing plan was detrimental to their physical, mental, or emotional health. The court found further that CPS had conducted an investigation resulting in a determination that abuse was "founded." Clerk's Papers at 207.

The trial court heard testimony from Hurd, who discussed G.M.'s disclosures that Tatyana had been abusing him physically for an extended period of time and that she did not always feed him enough. Hurd found these disclosures credible. Hurd also observed bruises on G.M. And D.M. made disclosures that corroborated G.M.'s version of the events.

The trial court also heard testimony from Smith in his role as the GAL. Smith agreed that Tatyana's action instilled a fear of harm in the children and noted that although G.M. and D.M. wanted to see their mother, they only wished to do so with supervised visits. Smith had no concerns about the children living with John and recommended that they continue to do so. The trial court found these aspects of Hurd's and Smith's testimony credible.

Tatyana takes issue with the trial court's reference to the findings and recommendations of a previous GAL in 2008 in support of what appears to be a claim that the trial court erred by relying on an outdated report. But the trial court simply mentioned that it had also reviewed [the GAL's] report from 2008. Tatyana cites no authority to support the proposition that a trial court cannot, on its own initiative, look into related material filed by an officer of the court in an earlier stage of a concomitant proceeding. And as described above, the evidence absent any mention of the earlier GAL report supports the trial court's findings.

Accordingly, we hold that substantial evidence supports the trial court's findings that modification of the parenting plan was in the best interests of the children because the existing arrangement was detrimental to their health. Therefore, we hold further that the trial court necessarily did not abuse its discretion by ordering modification.

## II. RECONSIDERATION

Tatyana asserts that the trial court abused its discretion by denying her motion for reconsideration because she obtained Dr. McCollom's evaluation report, which constitutes new evidence for the purpose of a CR 59 motion. But with reasonable diligence, Tatyana could have produced the McCollom report at trial, thus it is not new evidence. Therefore, the trial court did not abuse its discretion in denying the reconsideration motion.

8

We review a trial court's decision granting or denying a motion for reconsideration for abuse of discretion. *City of Longview v. Wallin*, 174 Wn. App. 763, 776, 301 P.3d 45, *review denied*, 178 Wn.2d 1020 (2013). CR 59 governs motions for reconsideration and provides in relevant part,

> (a) **Grounds for New Trial or Reconsideration.** On the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
>
> . . . .
>
> (4) Newly discovered evidence, material for the party making the application, *which the party could not with reasonable diligence have discovered and produced at the trial.*

(Emphasis added.)

Here, Tatyana contends that the trial court abused its discretion because the McCollom report was newly discovered evidence previously unavailable at the time the court made its decision. But to the extent that the report was unavailable before the presentation of the final orders, this was so only because of Tatyana's failure to contribute to the cost of the evaluation per the earlier court order.

The parties were well aware that the evaluation report existed at the time of trial and the court continued the matter for nearly a year to allow Dr. McCollom to complete the evaluation and to give the parties an opportunity to present their case in light of its conclusions. Tatyana would have been able to present the evaluation report had she used reasonable diligence to satisfy her

9

payment obligations in the months before the hearing concluded. Moreover, any argument to the contrary is undermined by the fact that Tatyana ostensibly secured some kind of agreeable payment arrangement almost immediately following the entry of final orders, such that she could file a timely motion for reconsideration.

Significantly, Tatyana failed to inform the trial court in her motion for reconsideration how the McCollom report would change the trial court's determination that modification of the parenting plan was warranted in light of substantially changed circumstances. Nor does she make such an argument to this court.[3] *See Fishburn v. Pierce County Planning & Land Servs. Dep't*, 161 Wn. App. 452, 473, 250 P.3d 146 (2011). Accordingly, we hold that the trial court did not abuse its discretion by denying Tatyana's motion for reconsideration.[4]

### III. ATTORNEY FEES

RCW 26.09.140 permits this court to award appellate attorney fees on a discretionary basis. Based on the record here, we decline to award fees to either party.

---

[3] The McCollom report's conclusions and recommendations are markedly similar to the conditions contained in the trial court's modified orders. There is nothing in the report that would cast doubt on the relief that the trial court granted John or that is particularly favorable to Tatyana.

[4] Tatyana also argues that this court should vacate the restraining order entered against her in conjunction with the modified parenting plan. But as explained, there was substantial evidence to support the court's ruling modifying the parenting plan. The restraining order precludes Tatyana from contacting G.M. and D.M. at their schools or home, which is entirely consistent with the parenting plan's requirement that Tatyana have only supervised visits.

No. 45835-7-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040,

it is so ordered.

JOHANSON, C.J.

We concur:

BJORGEN, J.

MAXA, J.

11